```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TARA MAHONEY,
                                                    MEMORANDUM AND ORDER
                    Plaintiff,                     11-CV-1835 (FB)

     -against-

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.
------------------------------------------------------------x
```

*Appearances:*

| For the Plaintiff: | For the Defendant: |
|---|---|
| CHARLES E. BINDER, ESQ. | LORETTA E. LYNCH, ESQ. |
| Law Offices of Harry J. Binder and | United States Attorney |
| Charles E. Binder, P.C. | ARTHUR SWERDLOFF, ESQ. |
| 60 East 42nd Street, Suite 520 | Assistant United States Attorney |
| New York, NY 10165 | Eastern District of New York |
| | 271 Cadman Plaza East |
| | Brooklyn, NY 11201 |

**BLOCK, Senior District Judge:**

Plaintiff Tara Mahoney seeks review of the portion of the final decision of the Commissioner of Social Security ("the Commissioner") that denied her application for Disability Insurance Benefits ("SSD benefits") under the Social Security Act. She alleges disability due to muscle weakness caused by a congenital neurological disease, Spinal Muscular Atrophy (SMA). Mahoney and the Commissioner both move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). They agree that the Commissioner's determination of her disability onset date was made under an improper legal standard, but disagree as to the appropriate remedy; Mahoney seeks remand solely for

calculation of benefits, while the Commissioner requests remand for further administrative proceedings.

## I.

Mahoney is a 43-year-old woman who previously worked as a bank teller, from 1988 to 1991, and a medical assistant, from 1991 to 1994. She ceased working in 1994 after falling down a flight of stairs and fracturing her distal tibia and fibula; she has not worked since.[1] Although she underwent surgery and physical therapy, a congenital muscle disorder impeded her recovery. Over the next several years, Mahoney continued to seek medical treatment and complained of pain in her ankle, foot, and knee, as well as increased weakness in her legs. She had surgery on her left ankle in May 1997 and knee surgery in August 1998, but continued to report pain and weakness in her lower extremities. A neurology consultation in March of 1998 found that Mahoney had weakness in all four limbs – particularly her legs, where proximal muscle strength was "about 2 out of 5" – but did not determine the cause beyond noting that it was hereditary; she declined to investigate further. R 288. Exams over the following years continued to note her congenital muscle weakness. By the time Suying L. Song, M.D., evaluated Mahoney's muscle strength in November 2007, she reported needing to lean on others to walk and was unable to stand from a seat without "tremendous difficulty." R 169. The exam showed "profound muscle weakness" in the lower

---

[1]Mahoney applied for SSD benefits in March 1995 as a result of the fracture and its complications. She alleged disability from August 15, 1994 – the date of the injury – through August 1, 1996. In a decision dated October 23, 1996, an ALJ granted her benefits for that period. Her current claim is based on subsequent impairment caused by SMA, which was not raised in the prior application.

2

extremities.  R 170.

In March and April 2008, doctors at the Mayo Clinic evaluated Mahoney and diagnosed her with SMA.  By that point, Mahoney's weakness in her upper and lower extremities included intermittent hand paresthesias and occasional numbness and tingling in her feet due to standing.  She reported a "marked decline in her level of function" over the "past six months to a year," following "many years of very slow progression."  R 216.  She could only walk while "hanging on to another individual," R 210, and her legs did "not move very well voluntarily."  R 213.  During a neurological exam conducted at the Mayo Clinic by Nathan Young, M.D., she had great difficulty walking, even with a walker, and the doctor recommended use of a power wheelchair.  R 213.

Petra Kaufmann, M.D., completed a disability questionnaire based on her examination of Mahoney on May 16, 2008.  She found Mahoney's motor strength to be 2 out of 5 in both her lower extremities due to SMA.  She opined that Mahoney could stand/walk for less than two hours a day, but had no limitation on sitting.  She added that Mahoney could "only walk short (household) distances" and was unable to carry anything while standing or walking due to her poor balance and leg strength.  R 226.  Dr. Song completed a disability questionnaire on July 9, 2009.  He had seen Mahoney three times since 2007.  He agreed that her "profound weakness of lower extremities" was due to SMA, a genetic disease of lifetime duration.  R 186.  Motor strength was 0-1 out of 5 in her right lower extremity, and 1-2 out of 5 in her left lower extremity.  Nevertheless, he opined that she could stand/walk for up to six hours per day, though she required a walker, and had no limitation on sitting.

On May 15, 2008, Mahoney filed claims for SSD benefits and Supplemental

3

Security Income benefits, alleging disability beginning January 1, 1997, due to SMA. Following a hearing on December 3, 2009, an Administrative Law Judge ("ALJ") concluded on December 18, 2009, that Mahoney had been disabled since May 15, 2008, but not before that date. Because she was not disabled on or before December 31, 2001 – the date she was last insured – Mahoney was not entitled to SSD benefits.[2] Applying the five-step disability analysis,[3] the ALJ found that (1) Mahoney had "not engaged in substantial gainful activity" since applying for benefits, AR at 20; (2) since the alleged onset date of disability – January 1, 1997 – Mahoney has suffered from "spinal muscular atrophy type III (progressive muscle weakness from degeneration of the lower motor neurons in the brain stem and spinal cord)," which constitutes a "severe impairment," AR at 20; (3) prior to May 15, 2008, Mahoney did not suffer from "an impairment or combination of impairments that met or medically equaled one of the listed impairments," AR at 20; and (4) she had the "ability to perform sedentary work" as of the date she was last insured, AR at 20.

The Appeals Counsel denied Mahoney's request for review on March 2, 2011,

---

[2]To be eligible for disability insurance benefits, an applicant must establish disability prior to the date her insured status expired. *See* 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1); *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Insured status is based on work and income history; one can accumulate "quarters of coverage" that last beyond cessation of employment. *See Acierno v. Barnhart*, 475 F.3d 77, 78-79 (2d Cir. 2007). In this case, the ALJ found that Mahoney had coverage to remain insured through December 31, 2001, and neither party contests that determination.

[3]Under the Social Security Act's regulations, disability claims are evaluated in five steps. In the first four steps, claimant has the burden of showing: (1) that she is not engaged in "substantial gainful activity"; (2) that she has a "severe impairment"; (3) that her impairment is on the list of impairments, in which case she is deemed disabled; and (4) that she cannot perform her previous work. *See* 20 C.F.R. § 404.1520(b)-(f); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). At the fifth step, the burden shifts to the Commissioner to show that claimant is capable of performing other jobs existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c); *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

and she commenced this action on April 14 of that year.

## II.

Both parties acknowledge that the ALJ erred in determining Mahoney's date of disability.[4] The sole point of dispute is whether the record compels a finding that she was disabled prior to December 31, 2001 – the date she was last insured – in which case Mahoney is entitled to benefits and further proceedings on remand are not required.

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Where there are gaps in the administrative record, remand for further proceedings is the proper course. *See Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999). In contrast, remand for calculation of benefits is appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Pratts v. Harris*, 626 F.2d 225, 235 (2d Cir.1980); *see also Rosa* 168 F.3d at 83; *Balsamo v. Chater*, 142 F.3d 75, 82 (2d Cir. 1998). This is such a case; the record is complete and compels a finding of disability.

The parties' agree that Mahoney suffers from SMA, a form of progressive muscle weakness caused by degeneration of certain motor neurons in the brain stem and spinal cord. The ALJ found that this condition met or equaled a listed impairment – "[m]uscular dystrophy with disorganization of motor function," 20 C.F.R. Part 404, Subpart

---

[4]Mahoney maintains that she has been disabled since January 1, 1997, while the Commissioner does not concede that Mahoney ever became disabled. The Commissioner acknowledges, however, that the ALJ failed to adequately weigh the opinion rendered by one of Mahoney's treating physicians and failed to follow the regulations for determining the onset date of a progressive impairment.

5

P, App'x 1, § 11.13 – but only as of May 15, 2008.  R 20.

The ALJ was correct in determining that, at some point, Mahoney's congenital, progressive neuromuscular disease reached the equivalent of the listing for muscular dystrophy.  An impairment is equivalent to a listed impairment when it is "equal in severity and duration to the criteria" listed.  20 C.F.R. § 404.1526(a); *see also Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment . . . is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment.").  The listing definition of muscular dystrophy requires "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station."  20 C.F.R. Part 404, Subpart P, App'x 1, §§ 11.04(b), 11.13.  It references section 11.00(c), which adds:

> Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) . . . frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. Part 404, Subpart P, App'x 1, § 11.00(c).  Inability to walk or effectively move one's legs due to SMA, a neurological disorder, is equivalent to this listing.

The difficulty lies in assessing when Mahoney's impairment reached the listing level of severity.  For disabilities of nontraumatic origin, such as SMA, determining the date of onset "involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity."  SSR 83-20, 1983-1991 Soc. Sec. Rep. Serv. 49 (1983).  The individual's stated onset date is the "starting point" of the analysis,

6

and "should be used if it is consistent with all the evidence available." *Id.*; *see also Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 304 (6th Cir.1988); *McCall v. Astrue*, 2008 WL 5378121, *18 (S.D.N.Y. 2008). Medical evidence serves "as the primary element" in the determination, but, as SSR 83-20 recognizes,

> [w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

SSR 83-20, 1983-1991 Soc. Sec. Rep. Serv. 49 (1983).

While the medical evidence in this case does not conclusively establish the point at which Mahoney's SMA became disabling, her stated onset date – January 1, 1997 – is consistent with the available evidence and the "history and symptomatology" of her condition. As Dr. Kaufmann – the associate director of the Columbia Spinal Muscular Atrophy Center, which is following Mahoney in its research center – explains in a letter dated May 7, 2009, SMA "is typically associated with severely limited movement," although patients display "varying degrees of physical disability." R 238. In all cases, "weakness gets progressively worse." R 238. Moreover, people with SMA require "an extended amount of recovery time" when injured, and may lose function permanently if immobilized for an extended period. R 238. Thus, Dr. Kaufmann opines, the immobilization following Mahoney's 1994 fracture worsened her condition. R 238.

In June 1996, Mahoney informed the orthopedist treating her for the fracture, Martin J. O'Malley, M.D., that she had "gotten weaker" since the accident – a development

7

consistent with the symptomatology of SMA. Mahoney's care focused on her ankle and knee problems, however, and the extent of her muscle weakness was not reflected in the medical records until March 4, 1998, the date of a neurology consultation which evaluated the weakness in her lower extremities. Mahoney reported that she had suffered from leg weakness since birth, but it was relatively stable until she spent several months in a wheelchair following the 1994 injury. She could walk approximately half a block without assistive devices and had difficulty lifting her legs, standing from a chair, and climbing stairs. She had to use her arms to elevate her legs onto the examining table. The examining physician found "weakness of all four limbs, worse in the lower extremities and worse proximally." R 288. Specifically, proximal muscle strength in her lower extremities was 2 out of 5; the hip abductors were slightly stronger at "3- to 3+ out of 5," as were her hamstrings. R 288.

Subsequent examinations from 1998 and 1999 consistently support the conclusion that Mahoney had severe muscle weakness in her lower extremities. Joseph D. Fulco, M.D., conducted an orthopedic examination on behalf of the Worker's Compensation Board on April 24, 1998, and determined that Mahoney could not walk on her heels and toes, ambulated slowly, and had motor strength of 3 out of 5 in "all areas." R 281. She reported being able to walk approximately one and a half blocks before stopping – it is not clear whether with or without assistance. When she was examined by an orthopaedic surgeon, Leon Sultan, M.D., in September 1998, he noted that she used a cane and had to "assist her own legs in placing them on the table due to the fact that she has an underlying congenital weakness of the muscles of both lower extremities." R 284. In a supine position, she was

"unable to do straight leg raising test on either side" due to muscle weakness, "with apparent significant weakness in quadriceps function." R 284. It is undisputed that Mahoney's muscle weakness was due to SMA, although she was not properly diagnosed until 2008.

In sum, the earliest medical records documenting Mahoney's muscle weakness – as opposed to her ankle and knee injuries – date from 1998. By that time, she had significant weakness in her lower extremities, which she attributed to immobility following the 1994 fracture. Given the progressive nature of SMA, Mahoney's alleged onset date of January 1, 1997, is supported by the record. In any event, her condition had certainly reached the equivalent of the "muscular dystrophy" listing by March 4, 1998, the earliest date in the record when a neurology examination revealed significantly compromised muscle strength in Mahoney's lower extremities. Because this was well in advance of her last date insured, Mahoney is entitled to benefits.

### III.

For the foregoing reasons, Mahoney's motion is granted and the Commissioner's cross-motion is denied. The decision of the ALJ should be reversed and remanded for calculation of benefits.

**SO ORDERED.**　　　　　　　　　　s/ Judge Frederic Block

　　　　　　　　　　　　　　　　　　　　　　　FREDERIC BLOCK
　　　　　　　　　　　　　　　　　　　　　　　Senior United States District Judge

Brooklyn, New York
June 4, 2012